## PEOPLE v BLOCKER

Docket No. 54698. Argued June 7, 1974 (Calendar No. 22).—Decided April 7, 1975.

Arnold R. Blocker was convicted by a jury in Berrien Circuit Court, Julian E. Hughes, J., of unlawfully driving away an automobile. Prior to trial, defendant's attorney filed a motion entitled "notice of insanity defense and motion to have defendant examined by two psychiatrists in support of insanity defense". The circuit court, Chester J. Byrns, J., ordered that Riverwood Mental Health Clinic or one well-qualified physician and psychiatrist be appointed to examine defendant to determine the issue of his sanity. Defendant was interviewed at the county jail by a social worker from the Riverwood Community Mental Health Center. The social worker, in his report, gave his opinion that defendant was entirely capable of fully understanding the nature and object of the proceedings against him and of comprehending his own condition in a rational and reasonable manner. There were no further proceedings relating to the issue of defendant's competence to stand trial. At trial defendant did not raise the defense of insanity. The Court of Appeals, Quinn, P. J., and J. H. Gillis, J. (T. M. Burns, J., dissenting), affirmed, holding that the motion was one to raise the defense of insanity and not the issue of competence to stand trial, and modified the sentence (Docket No. 13202). Defendant appeals. *Held:*

1. The issue of competence can be raised only by evidence of

REFERENCES FOR POINTS IN HEADNOTES

[1–3, 5, 8] 21 Am Jur 2d, Criminal Law §§ 32, 63, 64, 73.

[1–3, 5–8] Investigation of present sanity to determine whether accused should be put, or continue, on trial. 142 ALR 961.

[4] 75 Am Jur 2d, Trial § 705.

[5, 9] 21 Am Jur 2d, Criminal Law §§ 48, 49.

Validity and construction of statutes providing for psychiatric examination of accused to determine mental condition. 32 ALR2d 434.

[6, 7, 9] 21 Am Jur 2d, Criminal Law §§ 63, 64.

[10, 12] 21 Am Jur 2d, Criminal Law § 62, 65 *et seq.*

[11] 21 Am Jur 2d, Criminal Law §§ 48, 53.

incompetence; the court rule provides the procedure for raising and settling the issue formally, but it is the evidence of incompetence which establishes the defendant's rights.

2. Where no evidence of incompetence was adduced at trial and none is proffered on appeal, no reason is made out to disturb the verdict.

3. The jury instructions which explained the difference between unlawfully driving away an automobile and the included offense of unauthorized use of an automobile, conceded to be correct, were not unintelligible to a lay jury.

There was a dissent on the grounds that the defendant's motion raised the issue of competence to stand trial, and that the trial court erred in not committing the defendant to a certified diagnostic facility for a psychiatric evaluation of competence pursuant to statute, and in not holding a hearing required by statute to assess competence based upon the report of the facility and any other evidence presented by the parties.

45 Mich App 138; 206 NW2d 229 (1973) affirmed.

OPINION OF THE COURT

1. CRIMINAL LAW—COMPETENCE TO STAND TRIAL—RAISING ISSUE—EVIDENCE—STATUTES.

The issue of competence to stand trial can only be raised by *evidence* of incompetence; the statute on competence embodied this thought in the words "upon a showing" of incompetence (MCLA 767.27a).

2. CRIMINAL LAW—COMPETENCE TO STAND TRIAL—EVIDENCE—COURT RULES.

Evidence of incompetence is what establishes a defendant's right to the procedure provided by court rule for raising and settling formally the issue of his competence to stand trial (GCR 1963, 786).

3. CRIMINAL LAW—COMPETENCE TO STAND TRIAL—COURT RULES—HEARING—NEW TRIAL.

Neither failure to follow the court rule which provides the procedure for raising and settling the issue of competence to stand trial formally or failure to hold a hearing regarding competence ipso facto entitles a defendant to a new trial; where no evidence of incompetence was adduced at a trial or is proffered on appeal, no reason is made out to disturb the verdict (GCR 1963, 786).

4. Criminal Law—Automobiles—Unlawfully Driving Away an Automobile—Instructions to Jury.

>  Instructions to the jury on unlawfully driving away an automobile and the lesser included offense of unauthorized use of an automobile which explained the elements of each crime and sought to express the subtle differences between them and which were essentially correct were not erroneous where a reading of the instructions and explanation does not persuade that an attentive jury could not make out the difference in the two statutes (MCLA 750.413, 750.414).

### Dissenting Opinion

### T. M. Kavanagh, Swainson, and Williams, JJ.

5. Criminal Law—Competence to Stand Trial—Raising Issue—Motions—Sufficiency.

>  *The issue of defendant's competence to stand trial was raised in his pretrial motion to have defendant examined by two psychiatrists in support of an insanity defense and notice of intention to claim insanity as a defense where the overall tenor of the motion indicated that in addition to an expert opinion regarding the defendant's sanity at the time the alleged offense was committed, defense counsel sought a determination of the defendant's competency to stand trial, and where this is borne out by language contained in the motion, the order of the circuit court committing the defendant to a diagnostic facility, and the resultant diagnostic report issued after the defendant had been examined, and from the circuit court's order committing the defendant to a diagnostic facility, it is patent that the trial court treated the motion in question as requesting a determination of the defendant's competency to stand trial.*

6. Criminal Law—Competence to Stand Trial—Attorney and Client.

>  *Defense counsel stands in a unique position when he claims that the defendant is unable to aid in his own defense, and his doubts concerning his client's competence merit the court's serious consideration.*

7. Criminal Law—Competence to Stand Trial—Motions—Court Rules.

>  *A motion to raise the issue of competence to stand trial, ideally, should be entitled "Motion to Commit the Defendant to a Certified Diagnostic Facility for the Performance of a Psychiatric Evaluation to Determine the Defendant's Competence to Stand Trial", but if a motion not so entitled arguably places*

competence in issue, the trial court should either request the defendant and his counsel to clarify the nature of the motion on the record or alternatively treat the motion as properly placing competence in issue under the court rule providing the procedure for raising the issue of competence; the fundamental nature of the right involved cautions against exalting form over substance (GCR 1963, 786.1).

8. CRIMINAL LAW—COMPETENCE TO STAND TRIAL—CONSTITUTIONAL LAW—DUE PROCESS—STATUTES—NOTICE.

The statute defining the due-process right guaranteeing that a defendant may not be tried if he is unable to understand the nature of the proceedings against him and to aid in his own defense performs a dual function; first, it provides a type of notice to the court and the parties, that if it is thought that the defendant may fit within the definition of incompetence, they are on notice that his competence should then be placed in issue; second, it sets the standard by which the court must ultimately determine if the defendant is competent to stand trial (MCLA 767.27a[1]).

9. CRIMINAL LAW—COMPETENCE TO STAND TRIAL—PSYCHIATRIC EXAMINATION—STATUTES.

The statute setting out the procedure to be followed when the issue of competence to stand trial is raised is designed to guarantee that a questionably incompetent defendant is examined by qualified experts, and the fundamental nature of the right involved demands that the examination be made by a person who would be qualified to offer expert testimony in court on the subject; the statute further requires that the expert be associated with a certified diagnostic facility (MCLA 767.27a).

10. CRIMINAL LAW—COMPETENCE TO STAND TRIAL—HEARING—PSYCHIATRIC EVALUATION—EVIDENCE—STATUTES.

The statute providing for the determination of a defendant's competence to stand trial and stating that "the court shall immediately hear and determine the issue of competence to stand trial" after the defendant has been returned to the court from the certified diagnostic facility reserves to the court the duty ultimately to assess the defendant's competence based upon the report of the certified diagnostic facility and any other evidence presented by the parties; as written, this statute mandates a court hearing on the issue of incompetence (MCLA 767.27a).

11. CRIMINAL LAW—COMPETENCE TO STAND TRIAL—PSYCHIATRIC EVAL-
    UATION—WITNESSES—SOCIAL WORKER.

   *A trial court followed erroneous procèdure when it did not follow
   the statute by committing a defendant to a certified diagnostic
   facility after his counsel placed his competence in issue and
   conducting a hearing upon the report, but rather, allowed the
   trial to proceed after a social worker offered his opinion that
   the defendant was competent to stand trial (GCR 1963, 786.3).*

12. CRIMINAL LAW—COMPETENCE TO STAND TRIAL—REMAND—NEW
    TRIAL—HEARING—EVIDENCE.

   *Alternative dispositions for an appeal are available where it is
   found that a trial court erroneously assumed that a defendant
   was competent to stand trial: the case could be remanded for a
   new trial at which employment of the proper procedures will
   insure that defendant is competent to stand trial; or the cause
   could be remanded for a hearing before the trial court to
   determine if defendant was, in fact, competent to stand trial
   when he was first tried; remand for a new trial is the prefera-
   ble disposition where no psychiatric evaluation was made at
   the time of trial, because the need for a concurrent determina-
   tion of competence renders any type of* nunc pro tunc *hearing
   inadequate in a case where the court could not have found the
   defendant competent after a statutory hearing for the basic
   reason that the statute requires reasonably contemporaneous
   expert testimony on the subject of competence and none was
   then available (MCLA 767.27a).*

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *John A. Smietanka,*
Prosecuting Attorney, and *John J. Long,* Assistant
Prosecuting Attorney, for the people.

*State Appellate Defender Office* (by *Stuart M.
Israel),* for defendant on appeal.

T. G. KAVANAGH, C. J. Defendant was convicted
of unlawfully driving away an automobile and
sentenced to four to five years in prison. His
appeal to the Court of Appeals made three asser-
tions of error: 1) the judge's jury instructions were
defective, 2) the trial court did not resolve the
issue of defendant's competence to stand trial, 3)

the sentence was improper. The Court of Appeals found no error on the first two questions but modified the sentence.

Defendant appeals the decision of the Court of Appeals on the first two questions.

We affirm the Court of Appeals.

### Issue I. Competency To Stand Trial

Prior to trial on July 29, 1971, defendant through his attorney, filed the following motion:

"NOTICE OF INSANITY DEFENSE AND MOTION TO HAVE DEFENDANT EXAMINED BY TWO PSYCHIATRISTS IN SUPPORT OF INSANITY DEFENSE.

\* \* \*

"PLEASE TAKE NOTICE that the defendant in the above entitled cause proposes to offer in his defense testimony to establish his insanity at the time of the alleged offense and hereby gives notice of his intention to claim such defense.

"Now comes the above named defendant, Arnold Ray Blocker by his attorney, Gary G. Hosbein of the firm of Seymour, Seymour & Conybeare, and moves the Court for permission to have the defendant examined by two psychiatrists, Charles E. Payne, M.D. and Girard Rooks, M.D., or two other competent psychiatrists, and further to have the psychiatrists so chosen to be used as expert witnesses upon the trial of the above entitled cause and that the expense of such examination and the appearance of said psychiatrists at the trial be paid by the County of Berrien, State of Michigan, and said motion is made for the following reasons:

"That the defendant's attorney, Gary G. Hosbein, of the firm of Seymour, Seymour & Conybeare, is so informed and so believes, that after conversing with and observing the defendant with regard to the criminal charge, UDAA, pending against said defendant, during the preparation for and course of the prelimi-

nary examination of said charge that said defendant may be experiencing emotional stress and strain which will impair or even prohibit any meaningful participation of a proper defense on his behalf. The motion set forth above is based upon information, observation and belief alone."

On the same day that the motion was filed, the following order issued from the circuit court:

"At a session of said Court, held in the Court House in the City of St. Joseph in said County on the 28th day of July, 1971.

"PRESENT: Honorable [Chester J. Byrns,] Circuit Judge.

"Upon reading and filing the defendant's motion praying for the examination of the defendant to determine whether or not said defendant is capable of understanding the nature and object of the proceedings against him, of comprehending his own condition in a rational and reasonable manner, and it appearing that the prosecutor does not oppose to the granting of an Order for preliminary psychiatric evaluation.

"IT IS HEREBY ORDERED if the defendant is bound over to the Circuit Court that Riverwood Mental Health Clinic or one well-qualified physician and psychiatrist is hereby appointed and commissioned by this Court to examine said defendant to determine the issue of the defendant's sanity, as aforesaid, and to report their findings to the prosecuting attorney and the defendant's defense counsel, Gary G. Hosbein of the firm of Seymour, Seymour & Conybeare. IT IS FURTHER ORDERED that the expense of said examination be paid by the County of Berrien, State of Michigan."

It appears from reading the motion and the order, that although the defendant asked for examination by "two psychiatrists, Charles E. Payne, M.D. and Girard Rooks, M.D., or two other competent psychiatrists" the court's order "that Riverwood Mental Health Clinic or one well-qualified

physician and psychiatrist is hereby appointed and commissioned by this court to examine said defendant to determine the issue of the defendant's sanity, as aforesaid" was intended to be and was apparently accepted as a grant of defendant's motion.

The report from the Riverwood Clinic was made to the attorneys as directed and no request for hearing, objection, or other reference to defendant's competency is thereafter to be found in the record.

The case proceeded to trial on October 20, 1971, and the insanity defense was not pursued.

On appeal defendant asks us to set aside his conviction and grant him a new trial, asserting that the issue of defendant's competence was raised and not decided and hence, he claims, the trial was invalid.

Defendant argues that his motion for psychiatric examination and the statement therein of defense counsel that he believes "that said defendant may be experiencing emotional stress and strain which will impair or even prohibit any meaningful participation in the preparation of a proper defense" raised the issue of defendant's competence.

Conceding this to be true does little for defendant's position. The court granted his motion and from aught that appears in the record, settled counsel's fears. Certainly no more was said of it and no evidence was adduced to support the notion of defendant's incompetence.

The issue of competence can only be raised by evidence of incompetence. In *Pate v Robinson,* 383 US 375; 86 S Ct 836; 15 L Ed 2d 815 (1966), the United States Supreme Court said at 385:

"We believe that the evidence introduced on Robinson's behalf entitled him to a hearing on this issue. The court's failure to make such inquiry thus deprived Robinson of his constitutional right to a fair trial."[1]

Our statute, MCLA 767.27a(3); MSA 28.966(11)(3),[2] embodied the same thought: *"Upon a showing* that the defendant may be incompetent to stand trial, the court shall * * * "* (emphasis added).

Our Court Rule GCR 1963, 786, provides the

---

[1] A number of courts have declined to read *Pate v Robinson* as mandating a new trial whenever the trial judge erroneously fails to conduct a hearing on competency:

"We recognize, of course, that the Supreme Court has emphasized 'the difficulty of retrospectively determining an accused's competence to stand trial.' Obviously, psychiatric evidence based on examination six years after trial has very limited probative value as to competence at the trial. Pate v Robinson, *supra,* 383 US at 387, 86 S Ct at 843; Dusky v United States [362 US 402; 80 S Ct 788; 4 L Ed 824 (1960)], *supra* 362 US at 403, 80 S Ct at 788. But appellant seemingly would have us regard this admonition as a flat bar to any retrospective judicial determinations at delayed postconviction hearings concerning competency at trial. If such a bar proscribed any postconviction findings of competence at trial, it would constitute an automatic retrial opportunity for any convicted prisoner. If this admonition barred a postconviction judicial determination of either competency at trial or incompetency at trial, it would, of course, serve to defeat any postconviction review of a prisoner's claim that he had been tried while incompetent or improperly deprived of a trial determination on that issue. For obvious reasons post-*Robinson* cases generally choose to face the 'difficulty' of such determinations rather than be impaled on the horns of the dilemma posed above. *See* United States v Silva, 418 F2d 328 (2d Cir 1969); Kibert v Peyton, 383 F2d 566 (4th Cir 1967); Lee v State of Alabama, 386 F2d 97 (5th Cir 1967), on remand, 291 F Supp 921 (MD Ala 1967), aff'd, 406 F2d 466 (5th Cir), cert denied, 395 US 927, 89 S Ct 1787, 23 L Ed 2d 246 (1969); *See also* Green v United States, 128 US App DC 408, 389 F2d 949 (1967).

"We recognize also that in some circumstances the only appropriate remedy may be issuance of the writ and retrial after a current hearing on competence. Hansford v United States, 124 US App DC 387, 365 F2d 920 (1966); Rhay v White, 385 F2d 883 (9th Cir 1967)." *Conner v Wingo,* 429 F2d 630, 639-640 (CA 6, 1970).

*See also State v Sanders,* 110 Ariz 503; 520 P2d 1127 (1974); *Fowler v State,* 255 So 2d 513 (Fla, 1971); *White v United States,* 470 F2d 727 (CA 5, 1972).

[2] Repealed by 1974 PA 258. For current provisions *see* MCLA 330.2020 *et seq.;* MSA 14.800(1020) *et seq.*—REPORTER.

procedure for raising and settling the issue formally, but it is the *evidence of incompetence* that establishes the defendant's rights.

If there be *evidence* of incompetence, the issue must be decided. This is true whether the court rule is followed or not, or indeed if the evidence appears before, during or after the trial. Neither the failure to follow the court rule or the failure to hold a hearing ipso facto entitles a defendant to new trial.

Here, where *no* evidence of incompetence was adduced at the trial or is proffered at this time, no reason is made out to disturb the verdict. See *People v Lucas,* 393 Mich 522; 227 NW2d 763 (1975), decided today, for the appropriate procedure for presenting such evidence post trial.

## *Issue II. Jury Instructions*

Defendant was charged with violating MCLA 750.413; MSA 28.645 which reads:

"Any person who shall, willfully and without authority, take possession of and drive or take away, and any person who shall assist in or be a party to such taking possession, driving or taking away of any motor vehicle, belonging to another, shall be guilty of a felony, punishable by imprisonment in the state prison for not more than 5 years."

The trial judge instructed the jury that they could find defendant guilty of the lesser included offense of unauthorized use of an automobile proscribed by MCLA 750.414; MSA 28.646 which reads:

"Any person who takes or uses without authority any motor vehicle without intent to steal the same, or who

shall be a party to such unauthorized taking or using, shall upon conviction thereof be guilty of a misdemeanor, punishable by imprisonment in the state prison for not more than 2 years or by a fine or [of] not more than 1,000 dollars: Provided, That in case of first offense the court may in its discretion reduce the punishment to imprisonment in the county jail for a term of not more than 3 months or a fine of not more than 100 dollars: Provided further, That the provisions of this section shall be construed to apply to any person or persons employed by the owner of said motor vehicle or any one else, who, by the nature of his employment, shall have the charge of or the authority to drive said motor vehicle if said motor vehicle is driven or used without the owner's knowledge or consent."

He explained the elements of each crime and sought to express the subtle difference between them. After deliberating for over an hour the jury asked for restatement of the distinction. The court obliged.

Defendant concedes the instructions were essentially correct, but urges they were unintelligible to a lay jury. We are not persuaded from our reading of the instructions and explanation that an attentive jury could not make out the difference in the statutes.

We find no error.

Affirmed.

LEVIN, M. S. COLEMAN, and J. W. FITZGERALD, JJ., concurred with T. G. KAVANAGH, C. J.

SWAINSON, J. Defendant-appellant Arnold Ray Blocker was jury convicted in Berrien County Circuit Court of the crime known as unlawfully driving away an automobile. MCLA 750.413; MSA 28.645. He was sentenced to serve a term of four to five years imprisonment.

Prior to trial on July 29, 1971, appellant, through his attorney, filed the following motion:

"NOTICE OF INSANITY DEFENSE AND MO-TION TO HAVE DEFENDANT EXAMINED BY TWO PSYCHIATRISTS IN SUPPORT OF INSAN-ITY DEFENSE

\* \* \*

"PLEASE TAKE NOTICE that the defendant in the above entitled cause proposes to offer in his defense testimony to establish his insanity at the time of the alleged offense and hereby gives notice of his intention to claim such defense.

"Now comes the above named defendant, Arnold Ray Blocker by his Attorney, Gary G. Hosbein of the firm of Seymour, Seymour & Conybeare, and moves the Court for permission to have the defendant examined by two psychiatrists, Charles E. Payne, M.D. and Girard Rooks, M.D., or two other competent psychiatrists, and further to have the psychiatrists so chosen to be used as expert witnesses upon the trial of the above entitled cause and that the expense of such examination and the appearance of said psychiatrists at the trial be paid by the County of Berrien, State of Michigan, and said motion is made for the following reasons:

"That the defendant's attorney, Gary G. Hosbein, of the firm of Seymour, Seymour & Conybeare, is so informed and so believes, that after conversing with and observing the defendant with regard to the criminal charge, UDAA, pending against said defendant, during the preparation for and course of the preliminary examination of said charge that said defendant may be experiencing emotional stress and strain which will impair or even prohibit any meaningful participation in the preparation of a proper defense on his behalf. The motion set forth above is based upon information, observation and belief alone."

On the same day that the motion was filed, the following order issued from the circuit court:

"At a session of said Court, held in the Court House in the City of St. Joseph in said County on the 28th day of July, 1971.

"PRESENT: Honorable [Chester J. Byrns,] Circuit Judge

"Upon reading and filing the defendant's motion praying for the examination of the defendant to determine whether or not said defendant is capable of understanding the nature and object of the proceedings against him, of comprehending his own condition in a rational and reasonable manner, and it appearing that the prosecutor does not oppose to the granting of an Order for preliminary psychiatric evaluation.

"IT IS HEREBY ORDERED if the defendant is bound over to the Circuit Court that Riverwood Mental Health Clinic or one well-qualified physician and psychiatrist is hereby appointed and commissioned by this Court to examine said defendant to determine the issue of the defendant's sanity, as aforesaid, and to report their findings to the prosecuting attorney and the defendant's defense counsel, Gary G. Hosbein of the firm of Seymour, Seymour & Conybeare. IT IS FURTHER ORDERED that the expense of said examination be paid by the County of Berrien, State of Michigan."

Subsequently, appellant was interviewed at the Berrien County Jail by a social worker from the Riverwood Community Mental Health Center. Based upon the interview and appellant's prior history of contacts with the center, the social worker was of the opinion that "Mr. Blocker is entirely capable of fully understanding the nature and object of the proceedings against him, of comprehending his own condition in a rational and reasonable manner * * * ."

There were no further proceedings or hearings relating to the issue of appellant's competence to stand trial. The case against appellant proceeded to trial on October 20, 1971. At trial appellant did not raise the defense of insanity.

On this appeal we limit our consideration to a single issue:

Did the trial court err by allowing defendant to proceed to trial without first determining that he was competent to stand trial?

I

It is necessary to first address the people's argument that appellant never placed his competence in issue. As stated in the people's brief:

"When taken as a whole and considered together, it is clear that the purpose of the Notice, Motion, and Order was to provide a basis for a possible insanity defense at trial."

In our opinion, however, whatever may have been the primary object of appellant's motion, it did raise the issue of competence to stand trial. We quote with approval a portion of the dissent of T. M. Burns, Judge of the Michigan Court of Appeals, in this matter:

"'Although defense counsel's motion for psychiatric evaluation of the defendant was not a masterpiece of draftsmanship and admittedly could have been drawn with more precision, its overall tenor nonetheless indicates that in addition to an expert opinion regarding the defendant's sanity at the time the alleged offense was committed, defense counsel sought a determination of the defendant's competency to stand trial. This is borne out by language contained in the motion, the order of the circuit court committing the defendant to a diagnostic facility, and the resultant diagnostic report issued after the defendant had been examined.

\* \* \*

"From an examination of the circuit court's order committing the defendant to a diagnostic facility, it is

patent that the court below treated the motion in question as requesting a determination of the defendant's competency to stand trial." *People v Blocker,* 45 Mich App 138, 144–145; 206 NW2d 229 (1973) (T. M. Burns, J., dissenting).

The record reveals that the circuit court entertained defense counsel's motion and treated it as properly raising a competence question. Since there are no facts available to indicate that the court acted erroneously in this regard, we believe that it would be inappropriate for us to now second-guess its decision. The circuit court had the benefit of having defendant appear personally before it. It was, therefore, in a unique position to determine if counsel's claim that "defendant may be experiencing emotional stress and strain which will impair or even prohibit any meaningful participation in the preparation of a proper defense" constituted a sufficient "showing that the defendant *may be* incompetent to stand trial". MCLA 767.27a(3); MSA 28.966(11)(3). (Emphasis added.)[1] As the United States Supreme Court recognized in its recent opinion in *Drope v Missouri,* 420 US 162; 95 S Ct 896; 43 L Ed 2d 103 (1975), defense counsel stands in a unique position when he claims that the defendant is unable to aid in his own defense. Counsel's doubts concerning his client's competency merit the Court's serious consideration.

---

[1] Ideally, the motion should be entitled "Motion to Commit the Defendant to a Certified Diagnostic Facility for the Performance of a Psychiatric Evaluation to Determine the Defendant's Competence to Stand Trial." Such a title would avoid any later ambiguity as to the purpose of the motion. If a motion not so entitled arguably places competence in issue, the trial court should either request the defendant and his counsel to clarify the nature of the motion on the record or alternatively treat the motion as properly placing competence in issue under GCR 1963, 786.1. The fundamental nature of the right involved, however, cautions against exalting form over substance.

"The sentencing judge observed that 'motions for psychiatric examinations have often been made merely for the purpose of delay,' and 'estimated that almost seventy-five percent of those sent for psychiatric examination are returned mentally competent.' Although we do not, of course, suggest that courts must accept without question a lawyer's representations concerning the competence of his client, see *United States ex rel. Rizzi v Follette,* 367 F2d 559, 561 (CA 2 1966), an expressed doubt in that regard by one with 'the closest contact with the defendant,' *Pate v Robinson,* 383 US 375, 391 (1966) (Harlan, J., dissenting), is unquestionably a factor which should be considered. Moreover, resolution of the issue of competence to stand trial at an early date best serves both the interests of fairness, see *Peyton v Rowe,* 391 US 54, 62 (1968), and of sound judicial administration. See Panel on Recognizing and Determining Mental Competency to Stand Trial—Insanity as a Defense, in Institutes on Sentencing, 37 FRD 111, 155, 161 (1964). Realization of those facts may have prompted the practice, noted by the sentencing court, 'of the Circuit Attorney at the time to consent in all cases to a psychiatric examination whether with or without merit and without looking into the matter further.' " 420 US 177, n 13.

We conclude then that defendant's competency was placed in issue.

Our opinion today is accordingly limited to a review of the subsequent procedures followed by the circuit court.

## II

The statutory requirements and procedures governing the determination of a defendant's competence to stand trial are found in MCLA 767.27a; MSA 28.966(11) and GCR 1963, 786.[2] When read

---

[2] The sections in issue in the present case have been superseded by the new Mental Health Code, 1974 PA 258. *See* MCLA 330.2020–330.2044; MSA 14.800(1020)–14.800(1044).

together these sections provide a framework that allows the trial court to handle a competence issue however raised and at any phase of the proceedings.

MCLA 767.27a(1); MSA 28.966(11)(1) statutorily defines the due process right guaranteeing that a defendant may not be tried if he is unable to understand the nature of the proceedings against him and to aid in his own defense. See *Bishop v United States,* 350 US 961; 76 S Ct 440; 100 L Ed 835 (1956), reported below, 96 US App DC 117; 223 F2d 582 (1955); George, *Michigan's New Mental Health Legislation for Criminal Cases,* 46 MSBJ, Feb, p 13 (1967). This section states:

"A person is incompetent to stand trial within the meaning of this section if he is incapable of understanding the nature and object of the proceedings against him, of comprehending his own condition in reference to the proceedings, or of assisting in his defense in a rational or reasonable manner."

This section performs a dual function. First, the section provides a type of notice to the court and the parties. If it is thought that the defendant may fit within this definition of incompetence, they are on notice that his competence should then be placed in issue. Second, it sets the standard by which the court must ultimately determine, after an expert examination and a judicial hearing, if the defendant is competent to stand trial.

### III

The error in the circuit court's actions arose when it failed to follow the statute and court rule after granting defense counsel's motion. Once competence has been placed in issue and the court

determines as it did herein that the defendant
should be examined, the law is clear:

"Upon a showing that the defendant may be incompe-
tent to stand trial, the court shall commit the defend-
ant in the criminal case to the custody of the center for
forensic psychiatry or to any other diagnostic facility
certified by the department of mental health for the
performance of forensic psychiatric evaluation. The
commitment shall be for a period not to exceed 60 days.
Within that period the center or other facility shall
prepare a diagnostic report and recommendations
which are to be transmitted to the committing court.

"Upon receipt of the diagnostic report and recommen-
dations the sheriff shall immediately return the defend-
ant to the committing court and the court shall imme-
diately hear and determine the issue of competence to
stand trial. The diagnostic report and recommendations
shall be admissible as evidence in the hearing, but not
for any other purpose in the pending criminal proceed-
ings." MCLA 767.27a(3) and (4); MSA 28.966(11)(3) and
(4).

There is no dispute in this case that these sections
were not followed.

Although we are confident that the circuit court
acted in good faith when it bound defendant over
to the Riverwood Community Mental Health Cen-
ter, we cannot excuse its failure to follow the
statute. The statutory procedure is very explicit
and designed to guarantee that a questionably
incompetent defendant is examined by qualified
experts. The fundamental nature of the right in-
volved demands that an evaluation of a defend-
ant's competence be made by a person who would
be qualified to offer in court expert testimony on
the subject. The Legislature has further refined
this right by requiring that the expert be associ-
ated with "the center for forensic psychiatry or
* * * any other diagnostic facility certified by the

department of mental health for the performance of forensic psychiatric evaluation". MCLA 767.27a(3); MSA 28.966(11)(3). The court's action herein failed to afford Blocker with either his basic or his statutory rights to an expert evaluation.

The circuit court also erred by failing to hold a hearing as required by MCLA 767.27a (4); MSA 28.966(11)(4). This section reserves to the court the duty to ultimately assess the defendant's competence based upon the report of the certified diagnostic facility and any other evidence presented by the parties. As written, this subsection mandates a formal court hearing on the issue of competency. See generally, *Pate v Robinson,* 383 US 375, 384; 86 S Ct 836; 15 L Ed 2d 815 (1966); *People v Goodall,* 37 Mich App 223; 194 NW2d 454 (1971); *People v Lucas,* 47 Mich App 385; 209 NW2d 436 (1973); *People v Chase,* 38 Mich App 417, 420–421; 196 NW2d 824 (1972).

## IV

In view of the fact that the trial court erroneously assumed that the defendant was competent to stand trial, this Court has available to it two alternative dispositions for this appeal. The case could, first, be remanded for a new trial at which time employment of the proper procedures will insure that defendant is competent to stand trial; or, alternatively, the matter could be remanded for a hearing before the trial court in order to determine if defendant was, in fact, competent to stand trial when he was tried in 1971.

In this particular case, because no qualified psychiatric evaluation was made at the time of trial, we believe that the preferable disposition is to vacate defendant's conviction and remand for a new trial. In reaching this result we have been

guided by the persuasive reasoning of *Pate v Robinson, supra* and *Drope v Missouri, supra.* In *Pate v Robinson* the Court wrote:

"It has been pressed upon us that it would be sufficient for the state court to hold a limited hearing as to Robinson's mental competence at the time he was tried in 1959. If he were found competent, the judgment against him would stand. But we have previously emphasized the difficulty of retrospectively determining an accused's competence to stand trial. *Dusky v United States,* 362 US 402 [80 S Ct 788; 4 L Ed 2d 824] (1960). The jury would not be able to observe the subject of their inquiry, and expert witnesses would have to testify solely from information contained in the printed record. That Robinson's hearing would be held six years after the fact aggravates these difficulties. This need for concurrent determination distinguishes the present case from *Jackson v Denno,* 378 US 368 [84 S Ct 1774; 12 L Ed 2d 908; 1 ALR3d 1205] (1964), where we held that on remand the State could discharge its constitutional obligation by giving the accused a separate hearing on the voluntariness of his confession." 383 US 375, 387.

Similarly in *Drope v Missouri, supra,* the Court concluded:

"The question remains whether petitioner's due process rights would be adequately protected by remanding the case now for a psychiatric examination aimed at establishing whether petitioner was in fact competent to stand trial in 1969. Given the inherent difficulties of such a *nunc pro tunc* determination under the most favorable circumstances, see *Pate v Robinson,* 383 US, at 386–387 (1966); *Dusky v United States,* 362 US 402 [80 S Ct 788; 4 L Ed 2d 24] (1960), we cannot conclude that such a procedure would be adequate here. Cf. *Conner v Wingo,* 429 F2d [630] 639–640 (CA 6 1970). The State is free to retry petitioner, assuming, of course, that at the time of such trial he is competent to be tried." 420 US 183.

Following the United States Supreme Court's reasoning we believe that the need for a concurrent determination of competence renders any type of *nunc pro tunc* hearing inadequate in this case.[3] The circuit court could not have found Blocker competent after a MCLA 767.27a(4); MSA 28.966(11)(4) hearing back in 1971 for the basic reason that the statute requires reasonably contemporaneous expert testimony on the subject of competence and none was then available. It would be rather anomalous if the court were allowed to make judgment of competence four years after the trial that it was statutorily unable to make at the time of trial. Likewise, we find it irrelevant in our consideration of this case that defense counsel did not press the competence issue after receipt of the social worker's report. Since under our court rule the circuit court could not rely on the report to find Blocker competent, neither the defendant nor his counsel can be charged with intelligently withdrawing the competence issue on the basis of this same nonexpert report.

Appellant's conviction is vacated and this cause remanded for a new trial.

T. M. KAVANAGH and WILLIAMS, JJ., concurred with SWAINSON, J.

---

[3] Contrast *People v Lucas,* 393 Mich 522; 227 NW2d 763 (1975), where a competence report was prepared by the Forensic Center but no competence hearing was held by the trial court. In that case a *nunc pro tunc* hearing is an adequate remedy. The trial court will have before it expert testimony based on an examination of the defendant made shortly before trial.